**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
**vs.**
**KAMAL THOMAS, Defendant**

Criminal No. 298/2007

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

November 19, 2007

RENEE GUMBS-CARTY, Assistant Attorney General, V.I. Department of Justice, St. Thomas, V.I., *Attorney for the People.*

HAROLD WILLOCKS, Chief Territorial Public Defender, St. Thomas, VI, *Attorney for Defendant.*

KENDALL, *Judge*

## MEMORANDUM OPINION

(November 19, 2007)

**THIS MATTER** came on for Hearing on the People's "Motion for Pretrial Detention" and Defendant's Opposition thereto. Based upon the reasons set forth below, the Motion will be denied.

## FACTUAL BACKGROUND

In the early morning hours of June 19, 2007, a homicide took place on St. John, U.S. Virgin Islands. Detective Mario Stout, the lead investigator in this case, testified that an argument and physical altercation had taken place at the "Front Yard Bar" between the victim, James Patrick Cockayne, and Mr. Anselmo Boston after the former hit the jeep of Mr. Boston's girlfriend. Defendant, Mr. Boston's friend, was also involved in the altercation. Both Defendant and Mr. Boston were thrown

out of the bar. Later, when the victim left the bar, Defendant and Mr. Boston chased him to the Texaco gas station, hitting him with sticks. Several witnesses told Defendant and Mr. Boston to leave the victim alone.

Approximately one hour after the victim left the "Front Yard Bar," he was found stabbed to death in the vicinity of the Fashion Palace, across the street from the Texaco gas station. There were multiple puncture wounds and stab wounds on his body, but no eyewitnesses observed the stabbing.

The police found both Defendant and Mr. Boston that morning in a bar and questioned them about the altercation that had occurred earlier. Defendant was again interviewed by the police on July 10, 2007, at which time he gave a statement admitting his involvement in the altercation in the "Front Yard Bar" and later chasing the victim. He did not, however, admit to stabbing the victim. Defendant was arrested on August 3, 2007 pursuant to an arrest warrant issued on August 1, 2007.

Detective Stout testified that the case was still under investigation and admitted that he did not interview any alibi witnesses, although there were several witnesses who placed the Defendant elsewhere at the time of the murder. He also conceded that no witness had identified Defendant as the alleged perpetrator, and no one claimed to have seen him with a knife. Moreover, one witness described the alleged perpetrator as five (5) feet, ten (10) inches. Defendant is five (5) feet, four (4) inches. Detective Stout described the case as "circumstantial."

## ANALYSIS

### I. *Dowdye* is not controlling law

In support of their Motion, the People contend that Defendant should be denied bail pursuant to *People of the Virgin Islands v. Dowdye*, 48 V.I. 47 (V.I. Super. Ct. 2006)[1]. In *Dowdye,* the Court held that when a

---

[1]    Based in part on the reasons set forth herein, this Court had previously rejected the People's reliance on *Dowdye* in several cases where persons were sought to be detained pre-trial. In light of their insistence in continuing to rely on that case, this Court is constrained to set forth its reasons in writing if only to invite the People's reconsideration of their reliance on *Dowdye* when seeking in future to detain pre-trial persons charged with First Degree Murder.

153

Defendant is charged with First Degree Murder, and the proof of his guilt is evident or the presumption is great, bail must be denied pursuant to Section 3 of the Revised Organic Act of 1954, as amended ("ROA"). *Id.* at 67. This holding, however, is in direct conflict with well settled decisions of the United States Court of Appeals for the Third Circuit and the Appellate Division of the District Court of the Virgin Islands. *See, e.g., Government of the Virgin Islands v. Ortiz,* 427 F.2d 1043, 7 V.I. 521 (3d Cir. 1970)[2]; *Smalls v. Government of the Virgin Islands,* 30 V.I. 82 (D.V.I. 1994).

■ Section 3 of the ROA provides, *inter alia,* that "All persons shall be bailable by sufficient sureties in the case of criminal offenses, except for First Degree Murder or any capital offense when the proof is evident or the presumption is great." Title 48 U.S.C. § 1561 (2007). In *Ortiz,* the issue before the Third Circuit was whether the Federal Bail Reform Act (18 U.S.C. § 3141 *et seq.*) should apply when it conflicts with the afore-mentioned bail provision of Section 3 of the ROA. 427 F.2d at 1045. The Court held that although the Bail Reform Act does not by its own terms apply to cases where the offense charged is a violation of local law,[3] the Federal Rules of Criminal Procedure apply by their own terms to the trial of all criminal offenses in the District Court of the Virgin Islands, and Rule 46(a)(1) requires that a person arrested for an offense not punishable by death be admitted to bail. *Id.* at 1048. Since Congress provided in the Enabling Act[4] that "[a]ll laws in conflict with such rules shall be of no further force or effect," the Third Circuit held that Rule 46(a)(1) superseded the bail provision of Section 3 of the ROA and created a right to bail before trial for defendants charged with a non-capital offense. *Id. See also Government v. Bolones,* 427 F.2d 1135, 1137, 7 V.I. 516 (3d Cir. 1970) (Bail Reform Act applies to First Degree

---

[2]  The *Dowdye* decision is not easily understood because it represents an aberration in the annals of V.I. legal history. Upon information and belief, since *Ortiz* was decided 37 years ago, no other defendant charged with First Degree Murder in the Territory has been denied bail pending trial. Indeed, the Judge presiding in *Dowdye* had previously set bail for persons charged with First Degree Murder based on *Ortiz* and has since set bail for Defendants similarly charged. Moreover, while "*stare decisis* is no ground for continued error," where, as here, neither the Third Circuit nor the U.S. Supreme Court has reversed *Ortiz,* no error in deciding *Ortiz* can reasonably be claimed, thus no credence can be accorded *Dowdye*'s seemingly result-oriented departure from well-established precedent.

[3]  427 F.2d at 1047.

[4]  28 U.S.C. § 2072 (2007) [formerly 18 U.S.C. § 3771 (1969)].

Murder cases in the Virgin Islands). First Degree Murder is not a capital offense in the Virgin Islands, hence it is not punishable by death and is therefore a bailable offense. *Ortiz*, 427 F.2d at 1045. "It was recognized in the Congressional debates on the Bail Reform Act that if capital punishment were abolished, the conditions of pretrial release . . . would be applied to accused murderers and others previously subject to the penalty of death." *Id.* at 1048 n.12.

Moreover, Section 3 of the ROA was enacted in 1954. Congress enacted the Federal Bail Reform Act in 1966, and last revised it in 1984. Both the ROA and the Bail Reform Act are clearly Congressional enactments. To reconcile two conflicting statutes, Courts will usually find that the statute "last-in-time" is controlling. *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 311 (3d Cir. 2006). *See also Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991) ("When two statutes conflict the general rule is that the statute last in time prevails as the most recent expression of the legislature's will"). Being the "last-in-time," the Bail Reform Act certainly controls the disposition of cases where, as here, it conflicts with Section 3 of the ROA.

*Dowdye* states that the 1984 amendments to the ROA merely re-enact Section 3's bail provision. 48 V.I. at 63, n.30. However, no changes were made to Section 3 of the ROA in the 1984 amendments. It was merely reprinted. According to the Third Circuit, reprinting is not the same as re-enacting. *Ortiz*, 427 F.2d at 1046.

It is thus clear that, based on the foregoing, no credence can be accorded the People's contention that the Defendant should be denied bail pursuant to *Dowdye* where, as here, its holding cannot be reconciled with long-standing appellate decisions to the contrary and established principles of statutory construction.

### A. *Dowdye*'s attempt to distinguish the District Court from the Superior Court is unpersuasive

■ *Dowdye* further holds that *Ortiz* made the Bail Reform Act applicable to defendants charged with First Degree Murder **only in the District Court of the Virgin Islands.** 48 V.I. at 62. According to the Court, *Ortiz* was still good law, but "only to the extent a prosecution for Murder in the First Degree is brought in the District Court." *Id.* at 64 n.33. What *Dowdye* fails to recognize, however, is that the District Court was acting as a local court when it heard cases involving First Degree Murder.

Specifically, the District Court of the Virgin Islands is not an Article III Court, but rather an "institution with attributes of both a federal and territorial court." *Barnard v. Thorstenn*, 489 U.S. 546, 551, 109 S. Ct. 1294, 1299, 103 L. Ed. 2d 559 (1989). Prior to being divested by Congress in 1984 of jurisdiction over all local matters, the District Court exercised original jurisdiction over certain local crimes not vested in the Territorial Court, including First Degree Murder. *Id. See also* Section 22(b) of the ROA as amended, 48 U.S.C. § 1612(b). Specifically, "Congress provided in the Revised Organic Act that, for certain purposes, the District Court 'shall be considered a Court established by local law'. Section 1612(b)." 489 U.S. at 552. In exercising jurisdiction over First Degree Murder in *Ortiz*, the District Court was at all times acting as a "Territorial/Local" Court and not a "Federal" Court. Accordingly, *Dowdye*'s attempt to categorize the District Court as a "Federal" Court when deciding *Ortiz*, and thus distinguish that case from it, is flawed.

■ Moreover, the Territorial Court did not come into existence until 1976,[5] **after** *Ortiz* and *Bolones* were decided, and did not have jurisdiction over criminal matters in which the maximum penalty was in excess of one year. It was not until January 1, 1994 that the Territorial Court, pursuant to the 1984 Congressional Amendments to the ROA and Act 5594, assumed original jurisdiction over all local crimes, including First Degree Murder. Accordingly, the Appellate Courts' failure to include the Territorial Court when discussing the applicability of the Bail Reform Act to First Degree Murder cases can hardly be seen as a meaningful omission, since the Territorial Court did not have jurisdiction to hear such matters prior to 1994.

The appellate court cases, therefore, cannot be distinguished on the basis of the forum where the action was brought, since the District Court, at the time of these cases, was acting as a local court with exclusive jurisdiction over First Degree Murder cases.

---

[5] *See* Title 4 V.I.C. § 71; *United States v. Hodge*, 77 F. Supp. 2d 674, 677, 41 V.I. 428 (D.V.I. 1999).

## B. Title 5 V.I.C. § 3504a is the substantive law in the Virgin Islands concerning pretrial detention

Title 5 V.I.C. § 3504a, enacted in 1982, provides for the pre-trial detention of persons charged with dangerous crimes.[6] Such persons may be detained pre-trial, only if the government shows, *inter alia*, that there is no condition or combination of conditions which will reasonably assure the safety of the community or the person's appearance for trial.

The requirements for pre-trial release under the local statute are different from those set forth in the Bail Reform Act, because, unlike the latter, detention can only be sought under Title 5 V.I.C. § 3504a if the offense charged is among those defined as "dangerous" crimes. In *Karpouzis v. Government of the Virgin Islands*, 961 F. Supp. 841, 846, 36 V.I. 132 (D.V.I. 1997), the Court held that the procedures set forth in the BRA are just a guide for the Territorial Court of the Virgin Islands, not substantive law. Persons charged with Virgin Islands offenses in the Territorial Court could only be detained pre-trial pursuant to Title 5 V.I.C. § 3504a and not the B.R.A. *Id.* Indeed, the *Karpouzis* Court "was required to parse the BRA to eliminate those provisions allowing pre-trial detention in conflict with the substantive law of the Virgin Islands." *Georges v. Government of the Virgin Islands*, 958 F. Supp. 245, 246, 36 V.I. 126, 128 (D.V.I. 1997).

*Dowdye*, however, found that the local detention statute was at variance with the bail provision exception set forth in Section 3 of the ROA, as amended, and was therefore preempted. "[T]he local detention statute must be stricken, in part, or deemed inapplicable when it references first degree murder." 48 V.I. at 64, 68. *Dowdye* further states that Superior Court Rule 141 is contrary to and inconsistent with the Bail provision of Section 3 of the ROA, and therefore totally inapplicable. *Id.* at 70.

If the Bail provision of Section 3 of the ROA were taken literally, however, all persons not charged with First Degree Murder must be bailable. In that case, defendants charged with "dangerous" crimes other than First Degree Murder could never be detained pre-trial. As the

---

[6] "Dangerous" crimes include murder in the first degree, rape in the first degree, arson in the first degree, robbery in the first degree, burglary in the first degree, kidnapping for ransom, or drug trafficking.

*Dowdye* Court was well aware, however, this has not been the practice of the Superior Court of the Virgin Islands, because defendants who are charged with "dangerous" crimes, other than First Degree Murder, have been detained pre-trial when it was shown that no condition or set of conditions could assure their presence at trial or the safety of the community. It is only by recognizing that the Bail provision of Section 3 of the ROA has been superseded that the Court's rules, case law, and the practice of this Court can be understood. This recognition thus makes absurd any preemption of Title 5 V.I.C. § 3504a, Rule 141 of the Superior Court's Rules, and the "overruling" of *Ortiz, Bolones, Smalls, Karpouzis,* and *Thomas.*

■ Moreover, it is axiomatic that when a Legislature passes a statute, the Courts are required to do everything in their power to save that statute, rather than declare it unconstitutional because "the elementary rule is that every reasonable construction must be resorted to in order to save a statute from unconstitutionality." *Hooper v. California,* 155 U.S. 648, 657, 15 S. Ct. 207, 211, 39 L. Ed. 297 (1895) (citing *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 448-49, 7 L. Ed. 732 (1830)).

In *Government v. Thomas,* 32 V.I. 64 (Terr. Ct. 1995), the Court considered whether the local detention statute, Title 5 V.I.C. § 3504a, was in conflict with the Bail Reform Act. The Court found that the statutes were "not clearly inconsistent since the Bail Reform Act permits detention in every instance permitted by the local statute." 32 V.I. at 70. "This Court thus finds that both the rule and the statute are not repugnant and can be read consistently." 32 V.I. at 72. The Court also found that there was no provision in the Revised Organic Act contrary to the local detention statute. 32 V.I. at 70.

■ Based on the foregoing, it is clear that the bail provision of Section 3 of the ROA has been superseded by Title 5 V.I.C. § 3504a, the controlling substantive local law with respect to pre-trial detention.

### C. The Trial Court cannot overrule decisions of the Appellate Division of the District Court or the Third Circuit

*Dowdye* also states that it is a case of first impression. 48 V.I. at 55. However, the very same issue in *Dowdye* was previously decided by the Third Circuit and the Appellate Division of the District Court of the Virgin Islands. As noted heretofore, *Ortiz* clearly stated that the federal criminal rule providing for a right to bail for non-capital offenses

158

superseded the bail provision of the ROA. 427 F.2d at 1048. Additionally, *Bolones* held that the Bail Reform Act applied to First-Degree Murder cases in the Virgin Islands. 427 F.2d 1137. *Dowdye*, however, states that "the 1970 *Ortiz* decision . . . is not controlling in this Court," 48 V.I. at 80, and that "[a]pplication . . . of the *Ortiz* decision post the 1984 Amendments [to the Revised Organic Act] to any defendant charged with First Degree Murder in the Superior Court of the Virgin Islands is misplaced." *Id.* at 55. The Court is thus, in effect, overruling the U.S. Court of Appeals for the Third Circuit. *Dowdye* states that the issue is being revisited in light of the "subsequent intentional and purposeful changes made to the Revised Organic Act since the [Courts] . . . last addressed the issue," *id.*, and argues that the 1984 amendments to the ROA, which permitted the local legislature and Court to promulgate rules of procedure for the local courts, were significant. *Id.* at 62-63. This argument, however, is undermined by Section 21 (c) of the R.O.A. pursuant to which the Superior Court enacted Rule 141(b), which incorporated the Federal Bail Reform Act into the Court's rules, allowing bail for persons charged with First Degree Murder.

In *Smalls v. Government of the Virgin Islands*, 30 V.I. 82, 83 (D.V.I.App. 1994), the Appellate Division of the District Court held that Title 5 V.I.C. § 3504a governs pre-trial detention in the Territorial Court. The Court then applied the local statute's release conditions to a defendant charged with First Degree Murder. *Dowdye* alleges that "[n]o previous decision, until the instant case, has addressed the issue of whether a defendant charged with First Degree Murder under local statute in the Superior Court must be denied bail under § 3 of the Revised Organic Act of 1954, as amended." 48 V.I. at 67. *Smalls*, however, had previously addressed the identical issue and found that the local statute applied. 30 V.I. at 83. *Dowdye* contends that the ruling in *Smalls* was "improvidently rendered" because the Court "failed to recognize that the local bail statute was at variance, in part, with the bail provision exception set forth in § 3 of the Revised Organic Act of 1954." 48 V.I. at 64. The *Dowdye* court again, in effect, overruled an Appellate Court decision. Moreover, according to *Dowdye*, the forum in *Smalls* was the Territorial Court, not the District Court. *Smalls* was decided in 1994, after the 1984 amendments to the ROA. Even if *Ortiz* were not controlling in the Superior Court, there is no question that *Smalls*, an Appellate Court decision, is controlling in this Court.

■ Furthermore, at the time *Dowdye* was decided, the Appellate Division of the District Court served as the Appellate Court for decisions rendered by the Superior Court, and therefore had supervisory power over this Court. *See, e.g.* Title 48 U.S.C. § 1613a; *Government v. Bryan*, 738 F. Supp. 946, 948 (D.V.I. 1990). Similarly, the U.S. Court of Appeals for the Third Circuit has supervisory power over the District Court and, by the same token, the Superior Court. *See, e.g., Government of the Virgin Islands v. Lovell*, 378 F.2d 799, 805, 6 V.I. 422 (3d Cir. 1967) ("As an appellate court having jurisdiction over appeals . . . , we also have supervisory power.")

In *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 867 (3d Cir. 1984), the Third Circuit addressed the District Court's attempt to adopt the dissent rather than the majority opinion.

> Whatever may be the personal views of the district court as to the merits *vel non* of a decision of this court, the district court is not free to 'adopt' the dissent. This court is strict in its adherence to the precedent of its earlier opinions. . . . If the judges of this court are bound by earlier panels, *a fortiori* district court judges are similarly bound. Recognition of the hierarchical nature of the federal judiciary requires no less.

Observance of the judicial hierarchy is a necessary component of the court system. As the Eleventh Circuit stated:

> ■ Appellate courts have the power to issue mandates which are commands that cannot be ignored. Absent a Supreme Court decision to the contrary, district courts are compelled to follow mandates of appellate courts. The three tier system evolved purposefully and deliberately and operates to define the proper allocation of authority and responsibility within the judicial system. Experience has demonstrated that the system works. Throughout history courts at all three levels have recognized that careful observation of this allocation of authority is necessary for a properly functioning judiciary.

*Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1508 (11th Cir. 1987) (citations omitted). *See also State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S. Ct. 275, 139 L. Ed. 2d 199 (1997) ("it is this Court's prerogative alone to overrule one of its precedents.")

The *Dowdye* court is powerless to modify the appellate court's decision, even for clear error. In *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 16 S. Ct. 291, 40 L. Ed. 414 (1895), the Supreme Court stated:

> When a case has been once decided by this court on appeal, . . . whatever was before this court . . . is considered as finally settled. The circuit court is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; . . . or review it, even for apparent error, upon any matter decided on appeal.

■ The *Dowdye* court, therefore, was not free to question, much less overrule, a decision of the appellate division of the District Court or the U.S. Court of Appeals for the Third Circuit. As the appellate courts had already decided the exact issue before the Court in *Dowdye,* it was clear error for that Court to attempt to re-write the law. *Dowdye,* therefore, was erroneously decided, and is not binding on this Court.

## II. The People have failed to satisfy 2 of the 3 requirements for Pre-trial Detention

To detain a person pre-trial pursuant to Title 5 V.I.C. § 3504a(c), the People must show that (1) the Defendant is a person charged with a dangerous crime; (2) there is no one condition or combination of conditions which will reasonably assure the safety of the community or that the person will appear for trial; and (3) there is a substantial probability that the person committed the offense for which he is presented before the Court.

■ Since Defendant is charged with Murder in the First Degree, the first element has been met. The remaining two elements, however, have not been met here. With respect to the second factor, the Court previously determined that Defendant posed a risk of flight based upon his testimony during the "Advice of Rights" hearing. Specifically, the Court found that Defendant's ties to the community were minimal, inasmuch as he had resided in the U.S. Virgin Islands for only one year prior to his arrest and his only family member in the Territory was an uncle living on St. John. Even though he poses a risk of flight, however, the People failed to present any evidence that there was no condition or combination of conditions that could reasonably assure the safety of the community or the Defendant's appearance at trial. As such, they failed to satisfy the second factor for pre-trial detention.

With respect to the third factor, the People have also failed to show that there was a substantial probability that Defendant committed the offense charged. Not one witness identified Defendant as the perpetrator. No one claimed to have seen him with a knife that evening. There were apparently several alibi witnesses who placed Defendant elsewhere at the time of the murder. Detective Stout's own description of the case was that it was circumstantial. The People were able to show that Defendant had participated in a physical altercation with the victim at a bar prior to the alleged murder and was seen chasing the victim approximately one (1) hour prior to him being found dead. However, when viewed in the totality of the circumstances, it cannot reasonably be concluded that there is a substantial probability that the Defendant committed the crime of First Degree Murder.

## CONCLUSION

For the foregoing reasons, the Court concludes that all persons charged with First Degree Murder in the Superior Court are entitled to bail pending trial and *Dowdye*'s holding to the contrary is of questionable legal efficacy. Moreover, Title 5 V.I.C. § 3504a is the controlling substantive local law in the Virgin Islands regarding pre-trial detention, and must therefore be applied in determining whether to detain pre-trial one charged with First Degree Murder. The Court concludes that the People have failed to show that no condition or combination of conditions will reasonably assure the safety of the community or the Defendant's appearance for trial and that there is a substantial probability that he committed the crime of First Degree Murder. Accordingly, the People's "Motion for Pre-trial Detention" must be **DENIED**. An appropriate Order is attached.